Good morning, and may it please the Court, my name is Dan Brown, I represent C.S. McCrossan. There are two straightforward principles that explain the error in the Court below in this case. The first of them is that exclusions in an insurance policy in Minnesota, as elsewhere, are interpreted strictly and construed in favor of coverage, where there is a reasonable interpretation that that can be done. The second is that the words in a policy are given their ordinary, non-technical meaning from the viewpoint of a layperson. In this particular case, the two words that are at issue in the exclusion are authorized, representative. And what is important is that both of those words, authorized and representative, need to be given meaning. Not every service provider, for a principle, is an authorized representative. Not every agent is an authorized representative. Not every contractor or employee, or admin in this case, is an authorized representative. They are service providers, and there is a difference. Now in any insurance policy, the first place to go to interpret that insurance policy is the policy itself. And in this case, the term authorized representative is used in the policy more than in just the exclusion. It is used in the declaration page. It's at the appendix at page 36. And it provides that the policy itself is not valid unless it is signed by a duly authorized representative of the company, meaning in this case, Federal Insurance Company. The clear implication of that sentence in the declaration is that an authorized representative is not simply any employee, not simply any agent. It is someone who, in this transaction, actually had the authority to bind the company. The term itself isn't defined, is it? That is correct, Your Honor. It is not. So why, rather than looking to other parts of the policy, wouldn't we look to the Minnesota Supreme Court's suggestion that authorized representative has an agency requirement? And actually, Your Honor, as you state that, it's fine. You can go to National City and you can say that it has an agency requirement, and that is in fact what the Supreme Court said. But that does not mean that that means that every agent is then an authorized representative. In National City, what actually was at issue was the argument that that particular insured had someone who was holding on to certain contracts for the insured as a predicate for coverage in that case. And in that particular case, what happens is the insured says, well, I had someone out there, and as it turns out, I knew them. And the court in National City says, no wait, there's more to it than simply having the happenstance of a relationship with somebody. There actually needs to be an agency requirement, meaning some authority imbued in that person to actually, in this case, authorized representative represent the insured. So it's not that I mind National City. If what it was deemed to say was that any agent, especially any agent when you get to rules of sub-agency and imputing contracts to people, those sorts of things, those are not layperson issues. A layperson issue would be, did I authorize this person to do what it was that they were allowed to do? Did I authorize them to bind the company? And I think that's, in fact, the best teaching of what we're talking about. And National City is a transaction-based analysis. It is not any particular agency relationship will then provide that authorized representative. It needs to focus on the transaction at issue. So I'm okay with going to National City, Your Honor. But I don't actually think you do get there. I will say, with all due respect to Minnesota Supreme Court, I don't actually think you get there in this case because you can actually go to the policy. It's one thing to say- Counsel, we're a federal court. Minnesota Supreme Court has spoken to it. We're bound by it. I do understand that we're- The Supreme Court says that. Go ahead. Your Honor, I do understand that we're bound by the Minnesota Supreme Court where it controls. I'm suggesting that it's too much to read that as saying that any agent would suddenly be then imputed to be an authorized representative. In this case, I think there is certainly more to it than that. And the next set of hurdles for you are the circuit court decisions. I bet you're aware of it. It's Telemon? Yes. Telemon, and it cites the First and Ninth Circuit. It considers, I think, similar provisions. And they're not good for you either. What do you do with them? That's right. Well, Your Honor, every case that is cited outside of the jurisdiction in Minnesota deals with either entities themselves that were indisputably the actual entity that was imbued with that authority, or actually the people who are officers. And Telemon himself was actually the vice president of major accounts who was the wrongdoer in that case. Someone who actually shared identity with the entity that was described as the authorized representative in that instance. In Stop and Shop, for instance, you've got the entity and the principal. In the Southern California Counseling Center case, you've got the entity. In each one of those, you can look and see. What those cases do not address is the specific issue here where there was actually a separation between an entity who had been charged with managing the books and then an admin who, in fact, was not charged by anyone with actually having the authority to bind the company in any fashion. Now, to be clear, in this case, we actually don't have authority to bind even in Balderson Management. Balderson Management couldn't sign leases. Balderson Management couldn't do any of those things. Balderson Management could sign checks, but Cindy Balderson did not have authority to delegate to anyone else that authority to sign checks. So in this case, if we focus on that authority issue, we're able to see that the answer is there was, in fact, no authority by Stephanie Castillo. And that is the distinction from those cases, is that we have an admin in this case with a separate designation from those entity and principal cases that we're looking at in other circuits.  What about the Minnesota Supreme Court's wording in the Travelers case? That's about expectations. Minnesota's apparently an expectation state. And isn't the expectation that an insured will halfway watch and require two signatures or require an amount of money or do something? And so don't we have an expectations issue here that the insured would expect this to be covered? We certainly do have an expectation that the insured would expect this to be covered. In this particular case, actually, I would tell you that the expectation was that having said only certain people can sign checks, no one else is delegated with authority to do that, that when someone else forges, and there was no dispute through the forgery here, that when someone else forges that, that there would be an expectation of coverage. And I would say that actually one of the principal difficulties is that the authorized representative exclusion here is being used to frustrate what otherwise would be that ordinary meaning and then actual expectation of coverage. You're assuming the insureds are really, really good and not really, really bad, right? Well, the expectations covers bad insureds too. That is true, Your Honor. I mean, look, to be perfectly blunt, you wouldn't decide what the policy means based upon whether you're a very good insured or a very bad insured? Well, I think it covers both. I think the expectations doctrine in the Minnesota Supreme Court covers both of them. It's one of the criticisms of the expectations doctrine. Some states don't have a council. That's correct, Your Honor. And I do believe that Minnesota would apply to say that you have an expectation here to provide coverage in this thing. My only point was that in this case, C.S. McCrossin actually had the sorts of controls that one would expect to have and was able to say that they had not actually given any authority to Stephanie Castillo in this point, okay? Why isn't just access to this Tenet Pro system and communicating with vendors, this is a classic Audit 1A, you know, sham here, scheme. Why isn't that enough? That once you give someone access to this Tenet Pro system, as I understand, the way this is really done, why isn't that enough to make it authorized representative? It's true for two reasons. One, and the most important of which is that actually the direct cause of the loss here was forgery. Yeah. But you had to set up the vendors. Counsel, this is more complicated than forgery. Go ahead. Well, the cover-up. No, no, Counsel. The means, M-E-A-N-S. The means is the setting up of the vendors. Then you issue the checks, and then you sign them. You know how it works. Well, and I will say, though, that the direct cause of loss is still the forgery. And so the question is whether or not she is an authorized representative at that point, right? Because, by the way, Your Honor, just for what it's worth for a moment, there are several different insuring agreements in any crime policy. One of them is forgery. There are plenty of other ones in there. But when the insurance company, expectations again for a moment, says, I'm going to insure against forgery, and then the forgery occurs, even if there would be some other claims we could make or arguments we could make, that was the direct cause of the loss. Okay? You know, I'm just going to double-check. I see that my yellow light is on, and I had hoped to reserve five minutes of rebuttal time. I believe you're into that time right now. I am right now. So I'm just going to sit down for a moment, and then I will stand back up in a moment. Thank you. Thank you, Mr. Brown. Good morning, Mr. Wiegert. Good morning, Your Honor. May it please the Court, I'm going to see if I can actually take advantage of the movable podium. May it please the Court. Good morning, Your Honors. Joel Wiegert on behalf of Travelers. I don't think it's right. I think it is very important, quite frankly, to not lose sight of the facts, that issue here. We have an insured, Blakely Properties, and we can get this to our properties if we need to, that has no employees. It owns commercial properties. It runs a business leasing commercial properties, yet it has no employees. How does it do business? Well, it does business through a property manager. That property manager is Balderson Management. Balderson Management itself is a business. It's a corporation. How does it accomplish the task that it's been charged to do, delegated through a contract with Blakely Properties? Well, it accomplishes that through the individuals. That's what we're dealing here with. We have an individual who is charged with running Blakely Properties. That individual, along with the other individual at Balderson Management, co-managed the properties and leased those properties out. That is in the insured's proof of loss. That is a sworn document where the insured attests to the facts that are supporting why it believes coverage is available. In that sworn document, the insured says, I'm sorry, Stephanie Castillo, who is the individual that stole the money here, co-managed our properties and leased our properties out. That individual was acting on behalf of Blakely Properties. Agency, which is what the Minnesota Supreme Court says, we've already addressed the fact that authorized representative is not a defined term in a policy. When it isn't a defined term, we look to common dictionary definitions. Other courts have done that. Our court, which again, this court is bound to follow, when the highest court of the state jurisdiction has spoken to an issue, says authorized representative, when we look to figure out what that means, we look to agency principles. Well, it has an agency requirement. What other requirements does it have? It doesn't say it's the only requirement. What is not the only requirement? Well, it says, I'm quoting, being an authorized representative has an agency requirement. Does it have other requirements? The Supreme Court has not identified other requirements. That's the only instruction that we have been provided by our courts addressing this issue, is that it has an element of agency. So we look to agency principles. And what I've heard here this morning is not every agent is an authorized representative. Well, if that's true, that essentially just discounts entirely what the National City Bank case says, right? If we're going to apply principles of agency, but then at the same time we're going to say, well, not every agent or authorized representative is an agent, well, then we don't apply principles of agency. It's a circular argument. Counsel, let me ask a bigger picture question. What's your view of the purpose of this exclusion? The purpose of this exclusion is to eliminate those individuals for which the insurance company has no idea is conducting business on behalf of its insured from being covered under the policy. This is a first-party policy, meaning we're going to insure loss that the insured itself sustains. A big part of that policy is employee theft, probably the primary coverage that's provided under these crime policies. It's insuring agreement A. Absolutely willing to underwrite that risk and accept that risk on behalf of the insured that your employees are going to somehow defraud you. That's because we know who your employees are or we know what your business is. Insurance companies have the ability to underwrite their insureds. Well, this policy should have been pretty cheap then because there were no employees, right? Blakely Properties is one of eight or nine insureds under this policy. The primary insured is McCrossin, and that is a very large construction company that has numerous employees. When an insured here factors out the entirety of their business, it can do that to anybody, right? And so the insurance company would never have any idea who that's being done to. They don't know who they're contracting with, and when you're contracting with another party to conduct your business, then it's on you as the insured to do your due diligence to make sure that that other party, more or less, you're going to underwrite the other party and make sure that they've got the proper controls in place and that you're comfortable doing business with them. But once that policy is issued, the insurer has no control with whom the insured may decide to do business with, and the risk of doing business with a third party is a risk that's borne and retained by the insured. That's the purpose of that exclusion. Minnesota's an expectation state. You heard what I said before. You got a preview of it there. Why wouldn't the insured think this person should be covered? Well, Minnesota is a reasonable expectation state, but that also says that... Do they use reasonable with expectations regularly? They do. I'm sorry? Do they use it regularly, the term reasonable before expectations? Yes. Thank you. Proceed. Yes. And the Atwater case is kind of where all the other cases derive from. Reasonable expectations are not relied upon when there's no ambiguity in the policy. So once this court, if the court presumes and follows the National City Bank case, as well as all of the other circuit cases, which I understand is not precedent, this court does not have to follow them, but those cases all say the same thing. It is an agency principle that applies. Is the company or person authorized to act on behalf of another person? That's what authorized or empowered to act. I'm sorry. Is the representative an agent? Is a representative an agent? An authorized representative, I would say, certainly is an agent. Well, would a representative itself be an agent? May or may not be. Could you have an unauthorized representative? I'm sorry? Could you have an unauthorized representative? That seems like an oxymoron to me. I think, yeah, I mean, I guess that makes sense that what I'm looking at, there are other situations in the policy where they refer to representative, not authorized representative. Let me finish the argument. If assuming a representative is an agent, in order to give any meaning to the concept of authorized, wouldn't you have to say that that person had to be authorized to do a particular act? No. And all of the other circuit court cases have addressed that very issue. Okay. Let's look at what this. Tell me why those two then don't become redundant. Why superfluous almost? Well, the authorization signals some empowerment, right? I mean, that's the definition of authorization. That's where all of those circuit courts. So does representative, I think. Well, representative, you're acting on behalf of somebody else. So I suppose one could argue that it's implicit if you're just using representative. But representative is used elsewhere in the policy only as representative, not authorized representative. So I do think there is a heightened use of it when it's used. Do you know where else representative is used in the policy? Well, you can refer to one of the arguments that they've made with respect to exclusion B1A. It's referring to other agent or representative of the same general character. So they're using representative, not authorized representative. Is that insuring clause? You've got to help me by the way. No, it's exclusion BA. It's kind of, well, I can probably direct you to the page. And I may not have all the policy too, by the way. No, I'm sure you've got this because it's on the same page as the author. Yeah, I've got the exclusions for sure. B1A, I found it. The term representative is there? I don't see it, but maybe I'm just not seeing it. If you looked at B1A, the last line, agent or representative of the same general character. Okay. So yet another redundancy. Well, I wouldn't argue that's a redundancy because we use authorized representative in the other exclusion. So it should say authorized representative or representative. If they were intending to apply to the same thing. Yeah, but I mean for agent. You think an agent is an authorized representative? I think that if you were to put together a Venn diagram, authorized representative is going to be a big circular. Agent is going to be within that. You may have authorized representative beyond an agent too. We have, what the argument I've, was raised, or I think the court was addressed earlier. I think Judge Grunder, you were the one that raised it. With respect to specific authority, or what are you specifically authorized? All of the other courts have addressed that. And the most prominent one is Kubota. And that's the most recent. Kubota is an excellent case because quite frankly, it's the same facts as what we have here. And that is the bookkeeper and daughter of the principal is the one that committed the theft. Counselor McCrossin has claimed that Kubota is an entity case. It is by no means an entity case. The court never says that. This was addressed below quite a lot, actually, in our briefs in the district court level. They argued, well, no, it's an entity case. We said no. Nowhere in this case does it say it's an entity case. The judge right here plainly says it's the bookkeeper and the daughter of the owner that committed the theft. No appeal of that case, right? It's just a district court case. That is correct. Thank you. So what we did then was pulled up the actual supporting documents with respect to that particular case. It's in my affidavit, Exhibit 19, to my reply brief in the summary judgment below. And the deposition, sure enough, is the testimony of the owner of that company saying, no, this was done by my daughter, and I never had any idea any of it happened. That's exactly what we're dealing with here. We have a co-manager of the properties given charge to do numerous tasks and responsibilities. Counsel, do we have a fact question here as to whether Ms. Castillo is actually a co-principal or just a lower-level administrative person? There's no fact issue there. She is not a co-principal. She has no ownership interest in Balderson Management, Inc. How about a fact issue as to whether she was an authorized representative? There is no fact issue either. All of the, well, I mean, that's the ultimate legal issue that the court can determine, and determining that can be done as a matter of law based on the underlying facts. And that's exactly what Judge Erickson did. Agency could be established by course of dealing, could be established by contract. We've got both here. And there is no escaping the terms of these contracts. But doesn't that go to the distinction between a representative and an authorized representative? It seems to me you're trying to confuse the two. I'm absolutely not trying to confuse the two. So I, myself, perhaps I'm getting confused. We're dealing with authorized representative. National City Bank, Minnesota Supreme Court case, says when you, the definition, it's undefined, but we're going to apply agency principles and that's how we're going to figure out whether or not the person or the individual or the company qualifies as an authorized representative. Applying those principles of agency, we look to whether there's authority promulgated by the principal, whether the agent acts on behalf of the principal, whether the agent deals with the third party. That's the agency or the gay agency case that's cited in our brief. All of those three factors are satisfied here. We have a contract from McCrossin, well, Blakely Properties, that says unequivocally, owner, who is Blakely, hereby employs the services of the agent to manage, operate, control, rent, and lease the properties. Responsibilities of the agent, the owner hereby appoints agent as its lawful agent and attorney, in fact, with full authority to do any and all lawful things necessary for the fulfillment of this agreement. And then it steps through and talks about all of the specific things that the agent is empowered to do on behalf of Blakely Properties, the property owner. And that's referring to Ms. Castillo. So I'm looking at the 2006 agreement, which within that agreement refers to Balderson Management. It is understood that as part of this agreement, agents shall create a team with Balderson Management who will respectively be responsible for the property management and leasing responsibilities associated with this contract. That's laid out in a memorandum. Attached to that contract is, or the agreement, is the memorandum. The memorandum provides property management. Balderson Management will be responsible for the establishment of all bank accounts undertaking all accounting, including rental billing, deposits, distributions and disbursements, approval of invoices, establishment of necessary service contracts, property maintenance and upgrades, accounts receivable collections, annual budgets, year-end reconciliations, all tenant relations and maintenance of property management software. The above responsibilities will be fully those of Balderson Management. Balderson Management is a corporation. Sub-agency, the restatement that's cited by Judge Erickson below, we've got it peppered in our own brief. When the agent is a corporation, it is implied that consent is then given to the employees who are empowered to act on behalf of that corporation. Those employees become sub-agents or those individuals. So anyone who works for Balderson is an authorized representative? If they're working on what the subject matter of the authority provided by the contract applies to, and certainly that is exactly what she was doing here. She ran the tenant pro system. Your Honor addressed that before. That's how this fraud occurred. Now, it doesn't mean, in order for there to be coverage, that doesn't have to be the extent or in order for the, oh, I'm out of time. That does not need to be how the actual loss occurred. And Kubota again says that. But the fact is, everything ran through the computer that only she had access to. And the principal, Cynthia Balderson, only accessed that computer five or six times a year. I'm out of time. I'd be happy to answer any further questions, Your Honor. Hearing none. Thank you, Mr. Wiegert. Mr. Brown, rebuttal. Thank you, Your Honor. Let's start actually with a good question that you asked, which was, first of all, was the description of that authority Stephanie Castillo's authority or was it Balderson Management's authority? The record is absolutely clear that the Balderson Management authority was not delegated down to Stephanie Castillo. They didn't have authority to sign leases anyway, and it surely wasn't delegated to Stephanie Castillo. Counsel, I heard the word disbursements there. I heard two or three words in what he read. That's right. And is Balderson an LLC? An LLC has to act through its agents. So my goodness gracious, that just opened the door. But an implied authority is rebutted if there is an express exclusion of that authority. And it's clear here that Cindy Balderson did not delegate. For instance, I'll just take the approval of invoices one, a really nice easy one right in the heart of this issue, right? Approval of invoices was not delegated to Stephanie Castillo. She did not have authority to approve invoices. Balderson Management, Cindy Balderson, as the principal of Balderson Management, kept that. So if we're going to go down the road of sub-agency principles, it still matters. What was Balderson Management delegating? To answer the question, the answer is there would be, at worst for McCrossin, a fact question for what that authority that had been delegated to Stephanie Castillo was. The TenantPro system had all the vendors in it, right? That is true. Okay. Now you're telling me that you give somebody access to a computer system that does that, but you say it wasn't really delegated down to them? I don't get it. The question is not whether or not as a service provider that responsibility was delegated.  And the authority to bind the company is the authority that counts as an authorized representative. Not sort of, I mean, people don't, ordinary layperson conversation for a moment, people don't talk in terms of, I had authority to sort of do the work. I had a responsibility to do the work. That was my job. But that doesn't mean she has authority in the sense of binding McCrossin to something. And I do think that it's the binding McCrossin to something that actually matters in this instance. And binding them to, she doesn't have authority to sign checks. The Tenet Pro is used for all of these properties, right? Yes. Yeah. Oh boy. Go ahead. Yep. I do think there's a difference between service provider, as in data entry, and authority to actually bind the company. Okay. Let me hit on a different question for just a moment here. Kubota, can I just mention for a moment here, I know Mr. Weigert said it several times that it was not an entity case. It is an entity case. I'm looking right at the first part of it. The background description says that ECE, East Carolina Equipment, was engaged in a series of schemes to defraud Kubota in that case. The entire discussion is about ECE as the authorized representative. It is an entity case. It does not actually address anything about the distinction between sub-agency principles in there. And actually, Kubota does not actually fully address whether or not there needs to be a nexus between authority or not, because Kubota actually assumes and finds that there would have been a nexus. So if there's a fact question to be had, it would be on the idea of whether there's that nexus there or not. Kubota would actually support that. You asked another important question that I do want to address really quickly here, which is the purpose of this exclusion. First of all, if the purpose is that federal is concerned about whether they knew who they were underwriting, actually the facts in this case were they made no effort at all to determine what level of contracts or agents or sub-agents or anything else in the underwriting process. So to stand and say that the purpose of this exclusion is simply to say we're trying to define who we're underwriting, that doesn't make a lot of sense to me on the record. But more importantly, and probably the most important point, one of the ways in which the district court got that wrong is let's assume for the moment that that is the purpose of this contract, of this particular exclusion in the contract. We shouldn't be expecting lay people to leverage the words authorized representative into the idea that what that really means is any and every agent of my contractor. It is the insurance company who has the opportunity to rewrite this policy if it wants to rewrite this policy, to say that expressly, to not use words like agent in a different provision of the policy and then say authorized representative here. Authorized representative does mean those two words do have a meaning that requires authority and it did not exist here. I am out of time. Thank you very much. Thank you. Counsel, thank you for your arguments and appearance today. The case is submitted and we will decide it in due course. Does that complete our docket for argument this morning? Yes, Your Honor. Court will stand in recess until further call. Thank you.